Adam J. Kaiser, Esq.
Martin C. Geagan, Esq.
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700
(212) 294-4700 (fax)
akaiser@winston.com
mgeagan@winston.com
*Attorneys for Petitioner National Union*
*Fire Insurance Company of Pittsburgh, Pa.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
:
NATIONAL UNION FIRE INSURANCE :
COMPANY OF PITTSBURGH, PA.,   :   Case No. 16-cv-6269
:
          Petitioner,   :
:
   v.   :   **PETITION TO COMPEL**
:   **ARBITRATION PURSUANT TO THE**
:   **FEDERAL ARBITRATION ACT**
TUTOR PERINI CORPORATION,   :
:
          Respondent.   :
:
------------------------------------------------------------ x

      Petitioner National Union Fire Insurance Company of Pittsburgh, Pa. ("NUFIC") respectfully petitions this Court, pursuant to Sections 4 and 5 of the Federal Arbitration Act, 9 U.S.C. §§ 4, 5 ("FAA"), for an Order compelling arbitration against Respondent Tutor Perini Corporation ("Tutor Perini").

**NATURE OF THE ACTION**

      1.     This Petition concerns an agreement to arbitrate disputes relating to a complex insurance program known as a Rolling Contractor Controlled Insurance Program ("Rolling CCIP"). A CCIP is a type of insurance risk-management program designed to handle loss

exposures arising from large scale construction projects, whereby a general contractor procures workers' compensation and general liability insurance that will cover appropriately eligible subcontractors who work on the project. A CCIP allows general contractors to efficiently manage insurance costs and mitigate accident-related delays, which would be far greater if each contractor and subcontractor were to obtain its own insurance and pass such costs to the general contractor.

2. While a CCIP will usually cover a discrete project, a Rolling CCIP uses a master policy that covers many of the general contractor's projects, up to an aggregate contract value, often over a period of years, thereby allowing the general contractor to control insurance costs over the expanse of its business within the boundaries of the negotiated deal.

3. Respondent Tutor Perini is a publicly traded insurance company (NYSE: TPC) and is one of the largest general contractors in the United States. In 2009, following extensive negotiations between Tutor Perini and NUFIC, Tutor Perini procured a Rolling CCIP from NUFIC, that would span multiple years and cover construction projects with an aggregate contract value of over $1.3 billion (the "Insurance Program"). The Insurance Program was specifically bound with no projected cost or payroll in New York state.

4. To induce National Union to issue the Insurance Program, Tutor Perini and NUFIC (the "Parties") entered into a Payment Agreement for Insurance and Risk Management Services and a Mandatory Addendum thereto (collectively, the "Payment Agreement"), a copy of which is attached hereto as Exhibit A. The Payment Agreement defines Tutor Perini's obligation to pay NUFIC, and sets forth the collateral Tutor Perini would provide to induce NUFIC to undertake such an enormous coverage obligation. The Payment Agreement further requires the

Parties to arbitrate any disputes between them, and that any motions to compel arbitration be brought in a court located in Manhattan, New York.

5. In 2015, a dispute arose between Tutor Perini and NUFIC, when NUFIC sent an invoice to Tutor Perini asking it to pay approximately $4.6 million in additional premium and expenses to cover Tutor Perini's obligations under the Insurance Program. Tutor Perini refused to pay, and NUFIC drew down on the collateral posted by Tutor Perini, in the amount of approximately $4.6 million, to satisfy Tutor Perini's payment obligation.

6. Nearly five months later, Tutor Perini objected to NUFIC's draw on the collateral. More specifically, on September 23, 2015, Tutor Perini demanded in writing that NUFIC return the collateral "or otherwise submit the disputed invoice to arbitration pursuant to the provisions of the Payment Agreement." *See* Ex. B, Dispute Letter, at 5.

7. As described below, the Payment Agreement is a contract between the Parties that defines their relationship, including the duty to arbitrate any disputes under the Insurance Program. As Tutor Perini admitted in its September 23, 2015 letter, the Parties' dispute is subject to arbitration under the Payment Agreement.

8. Despite admitting that this dispute is arbitrable, however, Tutor Perini filed suit in California state court against NUFIC seeking damages based on NUFIC's draw of the collateral under the Payment Agreement.

9. Because the dispute is arbitrable, as Tutor Perini has already admitted in writing, NUFIC brings this Petition under the FAA to compel Tutor Perini to arbitrate its claims, and to also arbitrate the claims NUFIC has asserted against Tutor Perini in its own demand for arbitration (which Tutor Perini has refused to acknowledge or respond to).

10. This Petition is brought in this Court because the Payment Agreement expressly provides for, and Tutor Perini agreed to, the exclusive jurisdiction of courts located in New York County, New York, for any action, such as this one, to compel arbitration.

## PARTIES

11. NUFIC is a corporation existing under the laws of Pennsylvania with offices and its principal place of business located at 175 Water Street, New York, New York 10038.[1]

12. Tutor Perini is a corporation existing under the laws of Massachusetts with offices and its principal place of business located at 15901 Olden Street, Sylmar, California 91342.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331(a)(1) because the dispute is between citizens of different states – namely, New York or Pennsylvania on the one hand and California or Massachusetts on the other – and the amount in controversy exceeds $75,000, excluding interest and costs.

14. Tutor Perini consented to the exclusive jurisdiction of courts located in New York County with respect to any action or proceeding to compel arbitration, such as the instant Petition:

> any action or proceeding concerning arbitrability, ***including motions to compel*** or to stay arbitration, may be brought ***only*** in a court of competent jurisdiction in the City, County, and State of New York.

Ex. A, Mandatory Addendum, § 6 (emphasis added).

---

[1] The Payment Agreement was entered into on behalf of NUFIC "and all of its affiliates including but not limited to" a number of specifically named sister companies. Ex. A, at 1. NUFIC files this Petition on behalf of itself, and seeks relief for itself and all of its affiliates, some of which were also named as defendants in the California action filed by Tutor Perini.

15. Additionally, venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, actions, or omissions giving rise to the dispute occurred in this District.

## STATEMENT OF FACTS

### *The Insurance Program*

16. NUFIC and Tutor Perini are Parties to a Rolling CCIP. The Rolling CCIP here provided workers' compensation, employers' liability, and commercial general liability coverage for each separate construction project sponsored by Tutor Perini under the Rolling CCIP.

17. Coverage under the Rolling CCIP was expressly limited to four states: Arizona, California, Nevada, and Pennsylvania. Coverage under the Rolling CCIP was initially issued for a three-year period from November 1, 2009 to November 1, 2012, but was ultimately extended through September 4, 2013. The total construction value under the Rolling CCIP was $1,319,093,455.

### *The Payment Agreement*

18. Because an insurer issuing a large program like a CCIP knows that the initial estimated premium may be insufficient, and that additional premium may need to be collected from the insured for coverage that has already been provided, the CCIP insurer is, as a commercial matter, extending credit to the insured for the amount of the premium which may be owed in the future. This credit relationship, and other parts of the Parties' relationship, is governed by the Payment Agreement. Tutor Perini executed the Payment Agreement and its Mandatory Addendum on or around January 20, 2010. *See* Ex. A.

19. The Payment Agreement between NUFIC and Tutor Perini sets forth the terms of their credit relationship:

**WHAT HAVE *YOU* AND WE AGREED TO?**

> *We* **have agreed** to the following:
>
> - to provide *You* insurance and services according to the *Policies* and other agreements; and
>
> - to extend credit to *You* by deferring our demand for full payment of the entire amount of *Your Payment Obligation* if *You* make partial payments according to this Agreement.
>
> To induce us to agree as above,
>
> *You* **have agreed** to the following:
>
> - to pay us all *Your Payment Obligation* and to perform all *Your* other obligations according to this Agreement and *Schedule* for all entities covered by the *Policies*; [and]
>
> - to provide us with collateral according to this Agreement and *Schedule*[.]

*Id.*, at 3 (emphasis in original).

20. The Payment Agreement defines Tutor Perini's "Payment Obligation" as amounts that Tutor Perini "must pay" to NUFIC "for the insurance and services in accordance with the terms of the *Policies* [and] this [Payment] Agreement," and includes "the premiums and premium surcharges" under the Policies. Ex. A, Mandatory Addendum, § 2. It thus includes everything that Tutor Perini will pay NUFIC under the Insurance Program.

21. The Payment Agreement also provides that "[a]ll payments are due . . . within 30 days" of being invoiced for such payments. *Id.*, Mandatory Addendum, § 4. Failure to pay within 5 days after payment was due – or, in other words, 35 days of the later of the Invoice or receipt thereof – amounts to a default. *Id.*, Payment Agreement, at 7.

22. If a default occurs, the Payment Agreement establishes that NUFIC "may apply any collateral [it holds] in connection with this or any other similar primary casualty insurance policies or agreements to *Your Payment Obligation*." *Id.* at 6. Here, Tutor Perini posted cash

collateral of $9,900,000 to secure its obligations under the Payment Agreement. The Payment Agreement further provides that, in the event of a default, NUFIC "may draw upon, liquidate, or take ownership of any or all collateral [it holds] regardless of the form, and hold or apply such amounts to any of *Your Payment Obligation* under this Agreement or any other premium, surcharge, or deductible financing agreement . . . or under any *Policies.*" *Id.* at 8. The Payment Agreement specifies (*see id.*) that:

> [NUFIC] may satisfy *Your* [Tutor Perini's] obligations to [NUFIC] in whole or in part by set-off against any moneys, securities, collateral, consideration or property of *Yours* received by, pledged to, held by or otherwise available to us in connection with *Your Payment Obligation*. *You* authorize us after any default to charge any account that *You* maintain with us in connection with *Your Payment Obligation* in order to satisfy any of *Your* obligations.

### *The Aqueduct Project*

23. In or about August 2010, Tutor Perini requested that NUFIC incorporate the Aqueduct Project in Queens, New York into the Rolling CCIP (the "Aqueduct Project").

24. Tutor Perini's broker approached NUFIC to negotiate rates to cover the Aqueduct Project. At that time, coverage under the Rolling CCIP did not extend to New York, but instead was limited to Arizona, California, Nevada, and Pennsylvania.

25. Tutor Perini and NUFIC ultimately agreed on the rates that would be applied to the Aqueduct Project, which were higher than the rates for the other states specified in the Rolling CCIP, but less than the rates NUFIC would ordinarily charge for a construction project in New York.

26. NUFIC provided coverage to Tutor Perini for the Aqueduct Project, and charged the negotiated New York rates in addition to the estimated New York state workers'

compensation assessments.  The Aqueduct Project took years to complete, and Tutor Perini was covered by NUFIC for the entire duration of the project.

*The Dispute*

27. On or about November 3, 2014, NUFIC issued an invoice in the amount of $4,549,524, reflecting a premium adjustment that was largely driven by the New York rates for the Aqueduct Project (the "Invoice"). No payment was received within or after 35 days of the Invoice, thereby constituting a default under the Payment Agreement.

28. On May 1, 2015, faced with Tutor Perini's refusal to satisfy its Payment Obligation for six months, NUFIC, pursuant to the express terms of the Payment Agreement, drew upon the collateral in the amount of the Invoice.

29. Five months after the collateral draw, on September 23, 2015, Tutor Perini contested the Invoice and NUFIC's decision to draw upon the collateral, claiming in a letter that "the amount in question was wrongfully withdrawn from the collateral trust, without its knowledge and without any contractual basis to support such a withdrawal *and in contradiction to the relevant Payment Agreement*." *See* Ex. B, at 2. (emphasis added). That is, Tutor Perini acknowledged that its dispute with NUFIC over the Invoice and collateral draw is governed by the Payment Agreement.

*Tutor Perini's Duty to Arbitrate*
*Under The Payment Agreement*

30. The Payment Agreement contains two mandatory arbitration clauses. *First*, the Payment Agreement provides that disputes over the Payment Obligation – that is, the amounts Tutor Perini must pay NUFIC – "must immediately be submitted to arbitration." Ex. A, at 8. *Second*, the Payment Agreement even more broadly provides that "*[a]ny other unresolved dispute* arising out of this Agreement must be submitted to arbitration." *Id.* (emphasis added). The Payment Agreement vests the arbitrators with extremely broad jurisdiction, making clear

that the arbitrators "will have exclusive jurisdiction *over the entire matter in dispute*." *Id*. at 9 (emphasis added).

31. As is customary in large-scale insurance program arbitration, the Payment Agreement requires that the arbitration panel consist of three industry experts. *Id.* at 9. Specifically, each party is entitled to select its own party-appointed arbitrator, who then select a third arbitrator. *Id*., Payment Agreement, at 9; Mandatory Addendum, § 6.

*Tutor Perini Acknowledges Its Duty To Arbitrate,
But Then Refuses To Do So And Instead Files Suit*

32. Close to five months after NUFIC drew down on the collateral provided under the Payment Agreement in fulfillment of Tutor Perini's Payment Obligation, William B. Sparks, Executive Vice President, Treasurer, and Corporate Secretary for Tutor Perini, sent NUFIC a demand letter on September 23, 2015. Ex. B.

33. Mr. Sparks, on behalf of Tutor Perini, demanded that NUFIC either return the collateral and cancel the Invoice, "*or otherwise submit the disputed invoice to arbitration pursuant to the provisions of the relevant Payment Agreement.*" *Id.*, at 5 (emphasis added). Tutor Perini admitted in Mr. Sparks' letter that "[t]he relevant Payment Agreement stipulates that if there is a disagreement as to an amount of a payment obligation . . . *the dispute will be resolved by arbitration*." *Id.* at 4 (emphasis added).

34. Notwithstanding the Parties' arbitration agreement, and the above admissions that the dispute was arbitrable, Tutor Perini filed suit against NUFIC in the Superior Court of California in Los Angeles County (the "California Action") on June 21, 2016. *See* Ex. C (the lengthy exhibits to the Complaint are not included in Ex. C).

35. Tutor Perini's claims in the California Action center on the Payment Agreement. Tutor Perini disputes its Payment Obligation and alleges that NUFIC's drawing on the collateral

violated the Payment Agreement's collateral provisions. Significantly, Tutor Perini appended the Payment Agreement to its complaint in the California Action and alleged that NUFIC breached it. Ex. C, ¶¶ 36-37. And, Tutor Perini's claimed damages in all counts of the California Action precisely equal the amount of the collateral drawn by NUFIC.

### *NUFIC'S Demand For Arbitration*

36.   On June 30, 2016, NUFIC demanded that Tutor Perini agree to submit the Parties' dispute to arbitration (the "Arbitration Demand"). Ex. D. The Arbitration Demand demanded not only that Tutor Perini arbitrate its disputes against NUFIC, which Tutor Perini improperly asserted in the California Action, but also that Tutor Perini arbitrate NUFIC's affirmative claims for declaratory relief, as set forth in the Arbitration Demand. *Id.* at 3 (¶¶ 1-4).

37.   Pursuant to the Payment Agreement, Tutor Perini was required to respond to NUFIC's Arbitration Demand, by selecting its party-appointed arbitrator within thirty days (Ex. A, Mandatory Addendum, § 6), but Tutor Perini has failed to do so.

38.   To date, Tutor Perini has failed to respond to the Arbitration Demand at all, giving NUFIC no choice but to file the instant Petition to compel arbitration under the FAA, in the jurisdiction the Parties agreed would be the exclusive forum for such applications.

### **COUNT ONE**

### **(Petition To Compel Arbitration)**

39.   NUFIC incorporates each and every allegation above as if set forth fully and as verbatim herein.

40.   Section 4 of the FAA, 9 U.S.C. § 4, provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement … The court shall hear the parties, and upon being

satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

41. Pursuant to Section 4 of the Federal Arbitration Act, Tutor Perini should be compelled to arbitrate all claims raised in the Arbitration Demand (including all the claims asserted in the California Action), and NUFIC is entitled to an Order compelling Tutor Perini to arbitrate this dispute in accordance with the Parties' arbitration agreement.

42. Section 6 of the FAA provides that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."  9 U.S.C. § 6.

43. NUFIC thus respectfully submits this application as a motion, by way of Order to Show Cause, and respectfully requests that it be heard in the manner provided by the Rules of this District for the hearing of such motions.

44. Tutor Perini has already admitted in its Dispute Letter that the present issue, which relates to Tutor Perini's Payment Obligation as set out in the Invoice, is subject to arbitration in accordance with the Payment Agreement.  *See* Ex. B, at 5 ("TPC hereby demands that AIG/Chartis . . . ***submit the disputed invoice to arbitration pursuant to the provisions of the relevant Payment Agreement***") (emphasis added).

45. Notwithstanding its admission that this dispute is arbitrable, Tutor Perini has refused to submit the Parties' dispute to arbitration.

46. Aside from Tutor Perini's admission, the dispute is clearly referable to arbitration. The Payment Agreement contains mandatory arbitration clauses requiring arbitration of all disputes arising out of the Payment Agreement.  The issues in dispute – (i) the amount of Tutor Perini's Payment Obligation under the Payment Agreement, and (ii) whether NUFIC was

authorized under the Payment Agreement to drawn upon the collateral posted by Tutor Perini to satisfy Tutor Perini's Payment Obligation – are clearly subject to arbitration under the Payment Agreement.

47. Moreover, even if any doubts exist as to whether the Parties' disputes are arbitrable, the Payment Agreement clearly provides that all issues of arbitrability are expressly reserved for the arbitrators to decide. *See* Ex. A, Payment Agreement, at 9 ( "The arbitrators . . . will have exclusive jurisdiction over the entire matter in dispute, ***including any question as to its arbitrability***.") (emphasis added). There is no doubt that the Payment Agreement exists and is valid, or that it contains an arbitration agreement. Arbitration is therefore mandatory and must be compelled.

48. Section 5 of the FAA provides that:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

49. Pursuant to the Payment Agreement, the arbitration must be conducted before a panel of three arbitrators, with each party selecting an arbitrator, and those two party-appointed arbitrators selecting a third. *See* Ex. A, Mandatory Addendum, § 6. Pursuant to Section 5 of the FAA and the terms of the Payment Agreement, NUFIC respectfully requests that, if Tutor Perini

does not select an arbitrator within thirty (30) days of the filing of this Petition or the return date of this motion (whichever is sooner), the Court appoint one for Tutor Perini.

## PRAYER FOR RELIEF

WHEREFORE, NUFIC respectfully requests the following relief:

(a)  An order compelling Tutor Perini to arbitrate the dispute;

(b)  An order appointing an arbitrator for Tutor Perini should it not appoint one;

(c)  The costs and disbursements of this action, including an award of reasonable attorneys' fees;  and

(d)  Such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 8, 2016

WINSTON & STRAWN LLP

By:  /s/  Adam J. Kaiser

Adam J. Kaiser, Esq.
akaiser@winston.com
Martin C. Geagan, Esq.
mgeagan@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700
(212) 294-4700 (fax)

*Attorneys for Petitioner National Union Fire Insurance Company of Pittsburgh, Pa.*